# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1242
_____

United States of America

*Plaintiff - Appellee*

v.

Justin R. Bicket

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 11, 2012
Filed: January 30, 2013
[Unpublished]

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

PER CURIAM.

A jury found Justin Bicket guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Bicket to sixty-five

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

months of imprisonment. Bicket appeals his conviction, challenging the sufficiency of the evidence to support his conviction and arguing the district court abused its discretion in limiting the scope of his cross examination. We affirm.

Bicket was arrested by two members of the Metro Omaha Fugitive Task Force who were enforcing a felony warrant for Bicket's arrest. The arrest occurred after Bicket fled his residence in a white sedan with the officers in pursuit, drove to an apartment complex, and entered a pickup driven by a friend. The officers stopped the pickup, searched it, and found a red shoe box on the front passenger floorboard with two loaded firearms inside. Bicket's DNA was found on both weapons in subsequent DNA testing of the grip, hammer, trigger and safety of each firearm. A federal grand jury indicted Bicket with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He exercised his right to a jury trial, stipulating to his status as a felon.

To prove Bicket possessed the two firearms, the government called Bicket's girlfriend as a witness. On the day of Bicket's arrest, his girlfriend saw Bicket sitting on his bed with a red shoe box in his lap, wiping down two firearms with his shirt. Bicket then left his residence and drove away in a white sedan. Bicket's girlfriend further testified she had seen the two firearms in the red shoe box about a month before, while she was cleaning the bedroom closet. The government also called the pickup's driver. He saw Bicket enter the apartment complex parking lot in a white sedan, retrieve a red shoe box from its trunk, then approach and enter the pickup while asking to be driven away. In addition, the two arresting officers told the jury they found the two firearms inside the red shoe box on the passenger side of the pickup's floorboard, and that Bicket had been seated on the pickup's passenger side prior to his arrest. Finally, the government introduced the evidence of Bicket's DNA on the two firearms.

At trial, Bicket argued his DNA had been transferred onto the firearms from one of the two officers during the arrest. Bicket called an expert who opined that a secondary transfer of DNA was possible through the sweat of an arresting officer. On cross examination, the expert admitted the possibility of a secondary transfer was less likely because of the snow and cold weather present at the time of the arrest, the location of the firearms inside a closed shoe box, and the fact that the officer who secured the firearms (using latex gloves) never came into contact with Bicket during the arrest. The government also recalled its DNA expert, who testified a secondary transfer was unlikely primarily because of the intensity of Bicket's DNA on both firearms in multiple places.

To support his claim, however, Bicket asked questions to show DNA samples had not been taken from the other people present at the time of the arrest (the two officers and the pickup driver). Bicket's counsel asked one officer whether a DNA sample had been collected from him, and he answered no. Trial counsel also asked the same officer whether he knew if a DNA sample had been taken from the other officer or the pickup driver, and he answered no. During cross examination of the pickup driver, Bicket's trial counsel asked the driver whether he had supplied a DNA sample. The government objected, and the district court sustained the objection. Similarly, during the cross examination of the government's DNA expert, Bicket's trial counsel asked him whether he had compared DNA samples from either of the arresting officers, or from the pickup driver, to the DNA profiles found on the firearms. The government objected. The district court sustained the objection. After considering all the evidence, the jury found Bicket guilty. He filed a timely appeal.

We review Bicket's challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences. United States v. Johnson, 688 F.3d 494, 502 (8th Cir. 2012). In support of his claim, Bicket merely contends both his girlfriend and his friend (the pickup driver) lacked credibility. This argument is unavailing in

the context of a challenge to the sufficiency of the evidence. The testimony of the two witnesses, if accepted by the jury, was sufficient to prove Bicket possessed the two firearms, and it was up to the jury to assess credibility. See id.

Bicket also contends the district court abused its discretion by limiting the scope of his cross examination with respect to whether DNA samples other than his own had been collected or analyzed. Reviewing this claim for an abuse of discretion, United States v. Holy Bull, 613 F.3d 871, 873 (8th Cir. 2010), we find none. The district court correctly determined the question posed to the pickup driver about his DNA was irrelevant because the presence of the driver's DNA on the firearms would have only shown the possibility of joint possession, but would not have negated the government's overwhelming proof of Bicket's own possession. See United States v. Sianis, 275 F.3d 731, 733 (8th Cir. 2002) (indicating the government need not prove exclusive possession of a firearm to prove a violation of § 922(g)(1)). In addition, the question posed to the government's DNA expert about other samples was cumulative, because Bicket's counsel had already established through one of the arresting officers that no DNA samples other than Bicket's had been collected or analyzed. Finally, the evidence the government presented through the girlfriend, the pickup driver, and the two arresting officers was sufficient to convict Bicket without even considering the DNA evidence. Thus, any evidentiary errors with respect to the cumulative DNA evidence would have been harmless in any event. See Fed. R. Crim. P. 52(a).

We affirm the judgment of conviction.

_____